```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| DAVE ALICEA,<br><br>                Plaintiff,<br><br>    -versus-<br><br>CITY OF NEW YORK, et al.,<br><br>                Defendants. | No. 16 Civ. 7347 (LAP)<br><br>ORDER |

LORETTA A. PRESKA, Senior United States District Judge:

    Plaintiff Dave Alicea ("Mr. Alicea") alleges that he was attacked by another inmate, causing a hand injury, while he was a pretrial detainee on Riker's Island. He brings this action against the City of New York ("City") and Corrections Officer Dorothy Harrison ("Officer Harrison"), asserting claims of deliberate indifference to safety and municipal liability under 42 U.S.C. § 1983. Defendants move for summary judgment under Federal Rule of Civil Procedure 56(a). (Notice of Motion, dated June 14, 2019 [dkt. no. 88].) As explained below, their motion for summary judgment is GRANTED in part and DENIED in part.

I. **BACKGROUND**

    On August 24, 2013, Mr. Alicea was housed in Dorm 4B of the North Infirmary Command on Riker's Island along with fellow inmate Kenneth Law ("Mr. Law"). (See Plaintiff's Rule 56.1 Counterstatement, dated July 19, 2019 ("Pl. 56.1") [dkt. no. 96] ¶¶ 1-2.) Mr. Alicea, who had been in Dorm 4B since 2012, and

Mr. Law, who had been there for about a month, never had an altercation before and spoke casually about TV, magazines, and dominoes. (Id. ¶ 2-4.) Dorm 4B was separated into multiple spaces -- including living quarters, a pantry, a dayroom, and a laundry room -- and had a security desk where a correctional officer (the "B Post Officer") could sit, make entries into a logbook, and view most of Dorm 4B. (Id. ¶¶ 5-6.)

On August 24, 2013, Mr. Alicea woke up around 5:00 a.m. to serve breakfast to his fellow inmates. (Id. ¶ 7.) At around 11:00 a.m., he returned to bed and, before taking a nap, saw the B Post Officer at the security desk. (Id. ¶¶ 8, 49.) At around 12:00 p.m., Officer Harrison arrived at Dorm 4B to relieve the B Post Officer; Mr. Alicea was asleep at the time and did not see Officer Harrison come in. (Id. ¶¶ 9, 10.) Upon arriving, Officer Harrison started her required tour of Dorm 4B. (Id. ¶ 11.) Tours were done every half hour and could last about ten minutes depending on where inmates were located. (Id. ¶ 12.) On a tour, the corrections officer would make sure doors were locked and rooms clean, check for weapons or contraband, and inspect inmates for signs of life. (Id. ¶ 12.)

As Officer Harrison was making her tour, a loud noise woke Mr. Alicea from his nap. (Id. ¶ 13.) The noise was caused by Mr. Law, who was banging a cane or crutch against the windowsill near Mr. Alicea's bed. (Id.) Mr. Law had previously been cited

2

by the Department of Corrections for violent behavior against an inmate on at least one occasion. (Id. ¶ 42.) Responding to the noise, Mr. Alicea asked Mr. Law to stop banging on the window, but Mr. Law refused, saying: "No. I'll bang whenever I want to bang. I don't care because this is where I feed my bird." (Id. ¶¶ 14, 15.) Mr. Alicea testified that after he looked toward the security desk and saw no corrections officer, Mr. Law said, "You think you're tough[?]," and ran at Mr. Alicea swinging a piece of the crutch and a cane. (Id. ¶¶ 16-17.) In the ensuing scuffle, which, according to Mr. Alicea, lasted between 11-13 minutes, Mr. Alicea suffered a broken hand. (Id. ¶¶ 18, 23.)

The parties agree that Officer Harrison was in another part of Dorm 4B when the attack started and heard a loud thud from the living quarters, but they offer differing accounts on how she responded to the attack. (Id. ¶ 21.) Upon arriving to the scene, Officer Harrison did not activate her personal body alarm or immediately request backup, and, according to Mr. Alicea, the backup team arrived two minutes later despite being stationed close to the site of the attack. (Id. ¶ 57) Mr. Alicea testified that Officer Harrison watched the attack for over a minute before Mr. Alicea was able to dislodge the objects out of Mr. Law's hands. (Id. ¶¶ 23-24.) For her part, Officer Harrison testified that she responded and immediately instructed the inmates to stop fighting and to put the objects down, which

3

they did, making it unnecessary for her to activate her personal body alarm. (See id. ¶¶ 24-26.) Officer Harrison then notified the area supervisor, who responded immediately, and Mr. Alicea and Mr. Law were escorted out of the area. (Id. ¶ 26.)

The parties also give competing versions of the steps Mr. Alicea took to obtain relief after the incident. Mr. Alicea offered testimony and evidence that he sent grievance letters to Riker's Island staff that went unanswered. (See id. ¶¶ 41, 67-68.) Defendants, in turn, submitted affidavits from prison staff stating that Mr. Alicea never filed any such grievance letters. (See Defendants' Response to Plaintiff's Rule 56.1 Counterstatement, dated August 2, 2019 [dkt. no. 98] ¶ 41.)

Mr. Alicea filed this lawsuit pro se on September 20, 2016. The operative complaint alleges that Officer Harrison violated Mr. Alicea's constitutional rights by abandoning her post and leaving Dorm 4B unsupervised, failing to protect him from Mr. Law, and failing to intervene to stop Mr. Law's attack. (See Amended Complaint, dated Nov. 1, 2017 [dkt. no. 47].) Liberally construed, the complaint pleads a claim under 42 U.S.C. § 1983 and a claim for common law negligence. On June 14, 2019, Defendants filed their motion for summary judgment.

II. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), a court shall grant a motion for summary judgment "if the movant shows that

4

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the Court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

### III. **DISCUSSION**

Defendants move for summary judgment on five grounds: (1) Mr. Alicea's 42 U.S.C. § 1983 claim is barred because he did not exhaust his pre-suit administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"); (2) even if the claim is not barred, Mr. Alicea cannot establish liability under § 1983; (3) Officer Harrison is protected by qualified immunity; (4) Mr. Alicea failed to establish municipal liability against the City; and (5) Mr. Alicea's common law negligence claim is time-barred. The Court will address each issue in turn.

#### a. **Exhaustion of Administrative Remedies**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title

5

. . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates "must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016). To properly exhaust administrative remedies, inmates must comply with the applicable administrative rules, which "are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007).

Defendants argue that satisfying the exhaustion requirement here required complying with the New York City Department of Correction's Inmate Grievance Process ("IGRP"), which requires inmates to file an initial grievance with the IGRP office and then advance through several tiers of administrative appellate review before filing suit. (See Defendants' Memorandum of Law, dated June 14, 2019 ("Def. Br.") [dkt. no. 89] at 6; Declaration of Bridgette Nunez Figueroa, dated June 14, 2019 [dkt. no. 91], Ex. R ("IGRP Directive") §§ IV(D)-(J).) The IGRP requires inmates to pursue all levels of the administrative procedure even if they do not receive a response to their initial grievance. (See IGRP Directive § IV(D)(10)(a).) Defendants acknowledge, however, that the IGRP contains exemptions that free inmates who are making certain categories of complaints from going through the full IGRP process. (See Def. Br. at 7.)

One such exemption applies here and defeats Defendants' motion for summary judgment. Specifically, the IGRP provides that "[i]nmate allegations of physical or sexual assault by either staff or inmates are not subject to the IGRP process." (IGRP Directive § IV(B)(2)(b).) Courts in this Circuit have held that claims involving a correctional officer's failure to protect an inmate from another inmate's attack falls within that IGRP process exception. See Taylor v. City of New York, No. 16 Civ. 7857 (NRB), 2018 WL 1737626, at *5 (S.D.N.Y. Mar. 27, 2018) (a failure to protect claim involved "inmate allegations of physical assault by [other] inmates, and [were] therefore not grievable"); Taylor v. Swift, 21 F. Supp. 3d 237, 241–44 (E.D.N.Y 2014) (allegation "that prison officials stood idly by while [plaintiff] suffered an 'assault . . . by [other] inmates'" was not subject to grievance process), appeal dismissed, No. 14-3382 (2d Cir. Mar. 10, 2015).[1] Because Mr. Alicea's complaint alleges an assault by another inmate, it

---

[1] Although Defendants cite cases in their opening brief in which courts dismissed failure to protect claims on exhaustion grounds, none of those cases examined whether the claims were exempt from the IGRP's procedures. (See Def. Br. at 5–6); see also, e.g., Cicio v. Wenderlich, 714 Fed. App'x 2d Cir. 2018). In their reply brief, Defendants do not address Mr. Alicea's exemption argument, instead reiterating their earlier point that he failed to follow all the steps laid out in the IGRP before filing suit. (See Defendants' Reply Memorandum of Law, dated August 2, 2019 ("Reply") [dkt. no. 97] at 3–6.)

7

comes within the IGRP exception and is not subject to the full suite of IGRP procedures.

The parties agree that when an IGRP exception applies, the inmate must still file a grievance to satisfy his exhaustion requirement, though he need not go through the rest of the IGRP processes. (See Def. Br. at 7; Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion, dated July 19, 2019 ("Opp.") [dkt. no. 94] at 9.) Mr. Alicea submitted evidence of two grievance letters he purportedly sent regarding the incident with Officer Harrison. (See Pl. 56.1 41, 67–68.) Although Defendants contend that Mr. Alicea never actually filed those letters, that point merely highlights an area of factual dispute that the Court cannot resolve at this juncture. [2]

---

[2] Defendants ask the Court to ignore Mr. Alicea's grievance letters because he failed to produce them during discovery. (See Reply at 2-3.) The Court will not do so. Federal Rule of Civil Procedure 37(c)(1) provides that "if a party fails to provide information as required by Rule 26, the party is not allowed to use that information to supply evidence unless the failure was substantially justified or harmless." Spencer v. City of New York, No. 06 Civ. 2852 (KMW), 2011 WL 13257640, at *2 (S.D.N.Y. July 18, 2011). Although Mr. Alicea perhaps could have produced the letters at an earlier point, he litigated much of this case as a pro se plaintiff, and his delay caused Defendants no prejudice. There is therefore no basis for excluding his letters under Rule 37(c)(1), especially given that doing so would effectively result in dismissal of his case on exhaustion grounds. See Fed. R. Civ. P. 36(c)(1), Advisory Committee Notes to 1993 Amendments (explaining that Rule 36(c)(1)'s exceptions for "substantially justified" and "harmless" violations of the disclosure rules were designed "to avoid unduly harsh penalties," including in situations involving "lack of knowledge of a pro so litigant of the requirement to make disclosures").

Defendants' motion for summary judgment based on failure to exhaust administrative remedies is therefore denied.

### b. Failure to Intervene Claim Under § 1983

"The Eighth Amendment . . . requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." Blandon v. Aitchison, No. 17 Civ. 65 (KMK), 2019 WL 1206370, at *6 (S.D.N.Y. Mar. 14, 2019) (citing Farmer v. Brennan, 511 U.S. 825, 833 (1994)). "Because the Eighth Amendment applies only to convicted prisoners, pre-trial detainees" -- like Mr. Alicea at the time of the incident -- "are protected by the Due Process Clause of the Fourteenth Amendment." Fair v. Weiburg, No. 02 Civ. 9218 (KMK), 2006 WL 2801999, at *4 (S.D.N.Y. Sept. 28 2006) (citing Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996)). Courts nevertheless apply the same failure to protect standard developed under the Eighth Amendment to claims brought by pretrial detainees under the Fourteenth Amendment. Id.

Although "[p]rison officials have a duty to protect prisoners from violence at the hands of other inmates," Lee v. Artuz, No. 96 Civ. 8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000), not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To establish a

9

failure to protect claim, the plaintiff must show that (1) he was incarcerated under conditions that posed a substantial risk of serious harm, and (2) the defendant acted with deliberate indifference to the plaintiff's safety. Molina v. County of Westchester, 16 Civ. 3421, 2017 WL 1609021, at *2–3 (S.D.N.Y. Apr. 28, 2017); see also Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) ("[T]he plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm" and "that the defendant prison officials possessed sufficient culpable intent.").

Mr. Alicea advances two theories for his failure to protect claim. (See Opp. at 13–16.) First, he contends that Officer Harrison exposed him to conditions presenting a substantial risk of harm by abandoning her post and failing to supervise Mr. Law despite Mr. Law's history of violence and access to objects he could use as weapons. Second, Mr. Alicea argues for liability based on Officer Harrison's failure promptly to intervene after Mr. Law started assaulting him. The Court grants Defendants' motion for summary judgment with respect to Mr. Alicea's first theory but not his second.

As to the first theory, Mr. Alicea has not adduced sufficient evidence from which reasonable jurors could find that he faced a condition posing a substantial risk of serious harm. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (the

condition must be one of "urgency" that "may produce death, degeneration, or extreme pain" (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting))). Although he previously assaulted another detainee (Pl. 56.1 ¶ 42), Mr. Law never had a prior violent encounter with Mr. Alicea, and before the incident at issue here, the two inmates had a more or less friendly relationship. (Id. ¶ 4.) Given those undisputed facts, the Court rules as a matter of law that leaving the two inmates unsupervised did not pose a substantial risk of serious harm to Mr. Alicea or reflect a deliberate disregard to his safety. See, e.g., Desulma v. City of New York, 98 Civ. 2078, 2001 WL 798002, at *6-7 (S.D.N.Y. July 6, 2001) (granting summary judgment when plaintiff received verbal threats from inmates but had no previous physical altercations with his attackers); Fernandez v. N.Y.C. Dep't of Corr., No. 08 Civ. 4294 (KMW), 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) ("Absent clear notice of a risk of harm to the prisoner, courts routinely deny deliberate indifference claims based upon surprise attacks." (citation and internal quotation marks omitted)).

As to Mr. Alicea's second failure to protect theory, questions of fact preclude entry of summary judgment. Mr. Alicea testified that Officer Harrison stood and watched for one minute after discovering that Mr. Alicea and Mr. Law were fighting. (Pl. 56.1 ¶¶ 23-24.) Although Defendants contend

11

that Officer Harrison acted quickly and appropriately, reasonable jurors could conclude that, if true, her decision to wait roughly one minute without taking measures to halt the attack exposed Mr. Alicea to a substantial risk of serious harm. See George v. Burton, No. 00 Civ. 143 (NRB), 2001 WL 12010, at *3 (S.D.N.Y. Jan. 4, 2001) ("Certainly, the 'pervasive risk of harm' requirement is met when prison guards simply stand by and permit an attack on an inmate by another inmate to proceed." (quoting Davidson v. Cannon 474 U.S. 344, 348 (1986)). The facts and reasonableness of Officer Harrison's conduct after discovering the attack are questions to resolve at trial.

### c. Qualified Immunity

The Court also declines to grant summary judgment on Officer Harrison's qualified immunity defense. A defendant is entitled to qualified immunity if (1) his or her conduct did not violate clearly established law, or (2) it was objectively reasonable for him or her to believe that the conduct did not violate such law. Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999). As to the first prong, "the Supreme Court clearly established that, when a prison official stands by and watches an inmate attack another inmate, he has violated the constitutional rights of the inmate under attack." Villante v. Vandyke, No. 09 Civ. 759 (FJS)(DRH), 2008 WL 163596, at *3 (N.D.N.Y. Jan. 15, 2008) (citing Davidson v. Cannon, 474, U.S.

344, 348 (1986)). Here, there are fact questions as to whether Officer Harrison watched the attack without intervening and whether her delay, if any, was reasonable. Summary judgment is therefore inappropriate on the qualified immunity issue.

### d. Municipal Liability

The City is entitled to summary judgment on the municipal liability claim. A municipality cannot face liability as a "person" within the meaning of 42 U.S.C. § 1983 unless the municipality itself was at fault. Okla. City v. Tuttle, 471 U.S. 808, 810 (1985). To establish municipal liability, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). "Second, the plaintiff must establish a causal connection -- an 'affirmative link' -- between the policy and the deprivation of his constitutional rights." Id. (quoting Tuttle, 471 U.S. at 824 n.8.)

Here, Mr. Alicea makes absolutely no showing of any policy or custom established by the City that is causally connected to his injuries. Instead, Mr. Alicea tries to pump air into the events surrounding his attack, hoping to inflate what transpired into a larger, institutional failure. (See Opp. at 19.) The evidence, however, shows only a singular incident involving

13

Officer Harrison. With no policy or custom in play, there can be no municipal liability. See Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy."). The municipal liability claim is therefore dismissed.

    **e. Statute of Limitations**

Defendants argue that Mr. Alicea's common law negligence claim is time barred. (Def. Br. at 19-20.) New York's statute of limitations for negligence claims against municipal defendants is one year and ninety days, meaning that under a straightforward application of the limitations period, Mr. Alicea's negligence claim would have expired on November 22, 2014, nearly two years before he filed suit. See N.Y. Gen. Mun. L. § 50-i(1)(c). The Court of Appeals has recognized, however, that statutes of limitations are equitably tolled while the inmate completes the PLRA administrative exhaustion process. Gonzalez v. Hasty, 651 F.3d 318, 323-24 (2d Cir. 2011) (noting that without tolling, prison officials could "exploit the exhaustion requirement through indefinite delay in responding to grievances" (quoting Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002)). The extent to which Mr. Alicea benefits from tolling, if at all, hinges on the details of his administrative exhaustion efforts, which, as discussed above, remains an open

question of fact.  Accordingly, the Court denies summary judgment on the statute of limitations defense.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.  Counsel for the parties shall discuss settlement and shall inform the Court by letter no later than May 1, 2020, as to the status of the action.  The Clerk of the Court shall close the open motion [dkt. no. 88] and mail a copy of this order to Mr. Alicea.

SO ORDERED.

Dated:   March 31, 2020
         New York, New York

*Loretta A. Preska*
_____
LORETTA A. PRESKA
SENIOR U.S. DISTRICT JUDGE