UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVE ALICEA,

                             Plaintiff,

-against-

THE CITY OF NEW YORK, et al.,

                            Defendants.

1:16-cv-07347 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

       Dave Alicea ("Alicea" or "Plaintiff") brings this action under 42 U.S.C. § 1983 against the City of New York, the NYC Department of Correction, and Corrections Officer Dorothy Harrison (collectively, "Defendants"). Presently before the Court is Defendants' motion for (i) leave to amend their Answer pursuant to Federal Rule of Civil Procedure ("Rule") 15(a) to assert waiver and release as an affirmative defense, and (ii) judgment on the pleadings pursuant to Rule 12(c) on the ground that Plaintiff's claims are barred by a general release. For the following reasons, Defendants' motion is GRANTED, and the case is DISMISSED.

**BACKGROUND**[1]

       Plaintiff alleges that, while he was detained pretrial on Riker's Island in August 2013, he was attacked by Kenneth Law, another incarcerated person with whom Plaintiff shared a cell. *See generally* AC. Plaintiff asserts that Defendants acted with deliberate indifference to his safety in connection with Mr. Law's attack. *See id*. Plaintiff brings claims for common law negligence and violation of his constitutional rights under 42 U.S.C. § 1983. *See id*.

---

[1] Except as otherwise noted, the facts set forth herein are taken from the Amended Complaint and are presumed true for the purposes of Defendants' motion. *See* ECF No. 47 ("Amended Complaint" or "AC").

With the assistance of counsel, on August 1, 2013, Plaintiff submitted a notice of claim to the Office of the Comptroller for the City of New York ("Office of the Comptroller") in connection with a July 2013 incident, and he submitted a second notice of claim on October 18, 2013 in connection with the August 2013 incident involving Mr. Law. ECF Nos. 133-1 ("Sherwood Decl. Ex. A"), 133-2 ("Sherwood Decl. Ex. B"). On February 12, 2014, still with the assistance of counsel, Plaintiff executed a general release with the Office of the Comptroller in exchange for $4,000 (the "General Release"). ECF Nos. 133-3 ("Sherwood Decl. Ex. C"). The General Release identifies the "releasor" as "Dave Alicea, the claimant named in the NYC Comptroller claim," references the claim number associated with the August 2013 claim, and releases all claims that occurred through the date of the release. *Id*. at 2. It states, in relevant part:

> DAVE ALICEA . . . as 'RELEASOR,' in consideration of the payment of $4,000.00 . . . does hereby release and forever discharge the City of New York, and all past and present officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York, and all other individually named defendants and entities represented and/or indemnified by the City of New York, collectively the 'RELEASEES,' from any and all claims, causes of action, suits, debts, sums of money, accounts, controversies, transactions, occurrences, agreements, promises, damages, judgments, executions, and demands whatsoever, known and unknown, which RELEASOR had, now has or hereafter can, shall, or may have against the RELEASEES for, upon or by reason of any matter, cause or thing whatsoever that occurred through the date of this RELEASE. This RELEASE and settlement constitutes complete payment and satisfaction for all damages and injuries, including all claims for costs, expenses, attorney's fees and disbursements.

*Id*. at 2. Directly above Plaintiff's signature, the General Release emphasizes in bold, all capital letters: "**THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT**." *Id*. at 3.

Plaintiff commenced this case on September 20, 2016.  *See* ECF No. 2.  After the Court dismissed his initial Complaint with leave to amend, Plaintiff filed his Amended Complaint, with nine exhibits, on November 7, 2017.  *See* ECF No. 40; *see also* AC.  On March 31, 2020, the Court granted in part and denied in part Defendants' motion for summary judgment.  ECF No. 102.  The Court assumes the reader's familiarity with the factual background set forth in the motion to dismiss and motion for summary judgment opinions.  *See* ECF Nos. 40, 102.

Defendants discovered the General Release after summary judgment but before the parties submitted any pretrial filings and before the Court scheduled trial.  On September 9, 2022, Defendants filed their motion for (i) leave to amend their Answer pursuant to Rule 15(a) to assert waiver and release as an affirmative defense and (ii) judgment on the pleadings pursuant to Rule 12(c) on the ground that Plaintiff's claims are barred by the General Release.  ECF Nos. 131 ("Mot."), 134 ("Br.").  Plaintiff opposed the motion on October 7, 2022.  ECF No. 139 ("Opp.").  Defendants filed their reply on October 20, 2022.  ECF No. 140 ("Reply").  Accordingly, Defendants' motion is fully briefed.[2]

## DISCUSSION

Defendants argue that the Court should permit them to amend their Answer to assert the "waiver and release" affirmative defense, because no good reason exists to deny leave to amend, which must be freely given.  Br. at 4-7.  Defendants further argue that the Amended Complaint should then be dismissed because it is precluded by the General Release.  *Id*. at 11-14.  Plaintiff argues that amendment should be denied on grounds of undue delay and undue prejudice, and

---

[2] Because the parties submitted comprehensive briefing, and oral argument would not assist the Court, the Court declines to hold oral argument.  *See, e.g.*, *AD/SAT v. Associated Press*, 181 F.3d 216, 226 (2d Cir. 1999) (holding that "a district court's decision whether to permit oral argument rests within its discretion"); *see also* J. Rochon Individual Rules of Prac. in Civ. Cases 3(G).

that dismissal is not warranted since it is "a live issue" whether Plaintiff fairly and knowingly released the particular claims asserted in this case when he signed the General Release. Opp. at 4-10. The Court will first consider Defendants' motion to amend under Rule 15(a)(2) and then Defendants' motion for judgment on the pleadings under Rule 12(c). For the reasons that follow, the Court concludes that amendment is warranted, and Plaintiff's claims must be dismissed because they are barred by the General Release.

## I. Motion to Amend the Answer

### A. Applicable Standard

Rule 15(a)(2) provides that leave to amend an answer shall be "freely" given when "justice so requires." This Rule reflects two essential principles: that "pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated," and "'mere technicalities' should not prevent cases from being decided on the merits." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy*, 482 F.3d at 200). Here, Plaintiff contends that leave to amend should be denied on grounds of undue delay and undue prejudice. Opp. at 4-8.

Courts may "deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). "[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a

showing of prejudice." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id*. (quoting *State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

With respect to "undue prejudice," courts consider whether amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block*, 988 F.2d at 350. Undue prejudice, however, requires more than an "adverse party's burden of undertaking discovery" or the expenditure of additional time, effort, or money. *U.S. ex rel Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989); *see Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) ("The denial of leave to amend, based solely on delay and litigation expense, was an abuse of discretion.").

### B. Application

The Court finds that there is no undue delay or undue prejudice, and therefore permission to amend the Answer to add the affirmative defense of waiver and release should be freely given.

First, Defendants have not acted with undue delay. Although a considerable amount of time has passed in this litigation, Defendants have satisfactorily explained the timing of their motion.[3] Defendants explain that Plaintiff submitted notices of claims to the Office of the

---

[3] The Court considers the exhibits offered in support of Defendants' motion to amend for the purpose of assessing Defendants' explanation for the delay. *See Park B. Smith, Inc. v. CHF Indus.*, 811 F. Supp. 2d 766, 780 (S.D.N.Y. 2011) (considering declarations, exhibits, and interrogatory responses when assessing delay on a motion to amend); *see also Cresswell*, 922 F.2d at 72 ("The burden is on the party who wishes to amend to provide a satisfactory

Comptroller in August and October 2013, and subsequently executed the General Release with the Office of the Comptroller in February 2014. *See* Sherwood Decl. Exs. A, B, C, D. While the scope of the General Release sweeps broadly, the document itself only contains the reference number for Plaintiff's first claim, making it more difficult to locate in connection with Plaintiff's second claim that is at issue in this case. *See* Sherwood Decl. Ex. C.

      Defendants promptly requested information concerning Plaintiff's claims and releases, but did not receive the General Release in response. Specifically, less than three months after Plaintiff commenced this action and within days of being served with the initial Complaint, Defendants submitted a request to the Office of the Comptroller for any notices of claims filed by Plaintiff. *See* ECF No. 133-5 ("Sherwood Decl. Ex. E"). That request only yielded Plaintiff's second claim but not his first claim that was identified in the General Release. *See* Sherwood Decl. Ex. E. In February 2018, Defendants served their first set of interrogatories, which requested that Plaintiff "[i]dentify all Freedom of Information Law [("FOIL")] requests and any responses thereto, made by plaintiff or by anyone on plaintiff's behalf, concerning plaintiff's claim in this litigation." Br. at 11; *see* Opp. at 5. In response, Plaintiff identified four FOIL requests that he made between 2014 and 2017, but he did not disclose that he made a fifth request in June 2016, only two months before commencing this litigation, specifically for a copy of the General Release. *See* ECF No. 133-6 ("Sherwood Decl. Ex. F"); ECF No. 133-4 ("Sherwood Decl. Ex. D"); Br. at 3. Further hampering Defendants' efforts was the fact that Defendants *did* receive some releases from Plaintiff during discovery, but those releases did not include the General Release, did not identify Plaintiff's social security number (which could

---

explanation for the delay."). Unless otherwise noted, the Court does not consider this information for purposes of Defendants' Rule 12(c) motion.

6

have assisted Defendants to locate the General Release), and identified Plaintiff's birth year as 1967 instead of 1965, the birth year listed on Plaintiff's second notice of claim at issue in this litigation.  *See* Br. at 1-3 & n.2.

On July 1, 2022, two days after Defendants' current counsel was assigned to the case, Defendants renewed their request to the Office of the Comptroller for any notices of claim filed by Plaintiff.  *See* Br. at 3-4.  The renewed request included additional identifying information Defendants had learned during discovery, including Plaintiff's social security number.  *See id*.  The Office of the Comptroller produced the General Release in response to the July 2022 request.  *Id*.; *see* Sherwood Decl. Ex. C.  After discovering the General Release, Defendants promptly notified Plaintiff on July 6, 2022, notified the Court two days later, and thereafter moved to amend their answer to assert waiver and release as an affirmative defense.  Br. at 7; *see* ECF No. 127; Mot.

On balance, the Court finds Defendants' explanation satisfactory: whereas Plaintiff knew or should have known of the General Release since the start of this litigation, the General Release remained unknown to Defendants, despite their reasonable efforts, until July 2022 and Defendants then promptly moved to amend their answer.  Under these circumstances, any delay by Defendants was not undue.  *See, e.g.*, *Friedl v. City of New York*, 210 F.3d 79, 88 (2d Cir. 2000) (holding that there was no undue delay "given that the amendment was proposed only after discovery revealed additional relevant facts").  Indeed, although the interval between the filing of Defendants' Answer to the Amended Complaint and motion to amend is significant, it is similar to the interval in other cases in which amendment has been allowed and affirmed by the Second Circuit.  *See, e.g.*, *Richardson Greenshields Secur., Inc. v. Mui-Hin Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (permitting leave to amend the answer and collecting cases in which

courts have allowed amendment after three-year to five-year intervals and after the start of trial); *Block*, 988 F.2d at 350 (affirming district court's decision to allow amendment to answer "more than four years" after complaint was filed); *U.S. ex rel Mar. Admin.*, 889 F.2d at 1255 (holding that district court abused its discretion in denying leave to amend answer years after litigation commenced); *Expoconsul Int'l, Inc. v. A/E Sys., Inc.*, 145 F.R.D. 336, 338 (S.D.N.Y. 1993) (allowing amendment where "five years have passed" and "over 5600 pages of deposition testimony have already been taken"). Accordingly, Defendants did not act with undue delay.

Second, even if the Court focuses specifically on the delay between when Defendants obtained Plaintiff's social security number in 2018 and when they renewed their request to the Office of the Comptroller years later, that would not be a sufficient reason to deny leave unless there is also undue prejudice. *See Reubens v. N.Y.C. Dep't of Juvenile Justice*, 930 F. Supp. 887, 889 (S.D.N.Y. 1996) ("Unexplained undue delay is not a sufficient basis to deny a motion to amend, however, unless there is a showing that the defendant would be prejudiced by the amendment."); *Perez v. Escobar Constr., Inc.*, 342 F.R.D. 378, 381-82 (S.D.N.Y. 2022) (granting motion to amend because, even "assum[ing] that there was undue delay," there was no prejudice or bad faith). The Courts finds no undue prejudice.

None of the three conditions courts consider when evaluating undue prejudice are present here. *See Monahan*, 214 F.3d at 284. First, Plaintiff concedes that amendment would not prevent him "from bringing a timely action in another jurisdiction." *Id.* (internal citation omitted); *see generally* Opp. That is likely because the General Release would equally bar Plaintiff's claims here as it would in another jurisdiction. Second, amendment would not require Plaintiff "to expend significant additional resources to conduct discovery and prepare for trial" since the General Release, and the proposed defense based on that release, entirely preclude

Plaintiff's claims and require dismissal. *Monahan*, 214 F.3d at 284; *see infra* § II(B). Third, amendment would not "significantly delay the resolution of the dispute" because, as discussed further below, a defense based on the General Release resolves the dispute as a matter of law. *Monahan*, 214 F.3d at 284; *see infra* § II(B). The Court finds no undue prejudice under these circumstances. *See, e.g.*, *Gracia v. City of New York*, No. 16-cv-07329 (VEC), 2017 WL 4286319, at *2-4 (S.D.N.Y. Sept. 26, 2017) (finding no undue prejudice in allowing the defendants to amend their answer based on a similar general release).

      Plaintiff argues that the proposed amendment would entail additional discovery and delay because the parties would need to investigate whether Plaintiff voluntarily and fairly released his claims in this lawsuit through the General Release. *See* Opp. at 6-8. But Plaintiff does not actually identify any discovery that would be needed, let alone "*significant* additional" discovery. *Monahan*, 214 F.3d at 284 (emphasis added); *see Fluor Corp.*, 654 F.2d at 856 (holding that district court abused its discretion in denying motion to amend where "amendment w[ould] not involve a great deal of additional discovery" or "result in serious difficulty"). Indeed, amendment would require *no* additional discovery or delay because, as discussed below, the General Release bars Plaintiff's claims and requires dismissal. *See infra* § II. Additionally, Plaintiff has had notice of the General Release throughout the duration of this lawsuit since he personally signed it and named it in a FOIL request months before this case began. *See, e.g.*, *Gracia*, 2017 WL 4286319, at *2 (finding plaintiff not unduly prejudiced by amended answer where she "clearly had notice of the general release given that she signed it").

      In sum, Defendants' motion to amend was not brought with undue delay and would not unduly prejudice Plaintiff. Nor is there any other good reason to deny the motion. Accordingly, Defendants' motion to amend is granted, and the Court deems the answer to be amended for

purposes of deciding Defendants' Rule 12(c) motion. *See, e.g.*, *Monahan*, 214 F.3d at 284 (concluding that district court correctly granted motion to amend and construed answer as amended for purposes of deciding dispositive motion); *Thomas v. New York City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993) (deeming answer amended for purposes of considering affirmative defense to decide a motion for judgment on the pleadings).

## II. Motion for Judgment on the Pleadings

### A. Applicable Standard

Under Rule 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Courts apply the same standard under Rule 12(c) as under Rule 12(b)(6). *See Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013). To survive a Rule 12(c) motion, therefore, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts may "consider extrinsic material that the complaint 'incorporate[s] by reference,' that is 'integral' to the complaint, or of which courts can take judicial notice . . . ." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

A release is a type of contract "governed by principles of contract law." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 (2d Cir. 2001) (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)). Whether a contract is ambiguous is a question for the court. *Id*. "The interpretation of an unambiguous contract – including a release – is also a question of law reserved for the court." *Id*. Under New York law, "a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 463 (2d Cir. 1998). "If a contract is

clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). "When general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012) (quoting *Consorcio Prodipe v. Vinci*, 544 F. Supp. 2d 178, 189 (S.D.N.Y. 2008)) (alterations adopted).

### B. Application

The Court finds that the General Release is enforceable and precludes Plaintiff's claims.[4] First, the General Release unambiguously covers this lawsuit. It applies to "all claims, . . .

---

[4] The Court follows the lead of the parties and considers the General Release on the motion for judgment on the pleadings for several reasons. First, Defendants quote the General Release extensively, argue it is essential to the viability of Plaintiff's claims, and urge the Court to consider it; Plaintiff similarly refers to the General Release in opposition, and does not dispute that it is authentic and may be considered. *See, e.g.*, *United States v. Dist. Council*, 778 F. Supp. 738, 749 n.3 (S.D.N.Y. 1991) (where brief cited and quoted document, party "cannot now assert that [it] should not be considered"). Second, courts regularly consider nearly identical releases on Rule 12(c) motions as subject to judicial notice, integral to the pleadings, and/or incorporated into the pleadings. *See, e.g.*, *Smickle v. City of New York*, No. 16-cv-03333, 2018 WL 1578381, at *3-4 (S.D.N.Y. Mar. 29, 2018); *Gracia*, 2017 WL 4286319, at *2; *Nathaniel v. City of New York*, No. 16-cv-00256, 2017 WL 3912986, at *2 n.2 (E.D.N.Y. Sept. 6, 2017); *Arzu v. City of New York*, No. 13-cv-05980, 2015 WL 4635602, at *3 (S.D.N.Y. Aug. 3, 2015); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 421-22 (2d Cir. 2011). Finally, even if the General Release was not considered under Rule 12(c), the Court is permitted to convert Defendants' motion into a summary judgment motion. *See* Rule 12(d). Defendants' brief (at 11 n.8) gave "sufficient notice" that the motion may be converted. *Galiotti v. Green*, 475 F. App'x 403, 404 (2d Cir. 2012) (internal citation omitted). Plaintiff also had a "reasonable opportunity" to respond, especially since he knew of the General Release before filing suit and has not identified additional facts essential to justify his opposition. *See id.*; *Stewart v. Transp. Workers Union, Local 100*, 561 F. Supp. 2d 429, 436 (S.D.N.Y. 2008). Plaintiff further equates the standards of review by stating that "similar to a motion under Rule 12(c), a motion for summary judgment may be granted 'only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" Opp. at 10 n.5 (citation omitted). Here, the Court finds for the reasons stated in Section II(B) that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

known and unknown, which [Plaintiff] had, now has or hereafter can, shall, or may have against [Defendants] for, upon or by reason of any matter, cause or thing whatsoever that occurred through" February 12, 2014.  Sherwood Decl. Ex. C.  This language squarely encompasses Plaintiff's claims in the Amended Complaint, which are based on the alleged incident from August 2013.  *See id*.; AC.  Second, Plaintiff knowingly and voluntarily entered into the General Release.  Plaintiff signed the General Release directly below attesting, in bold, all capital letters, that: "**THE UNDERSIGNED HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT**."  Sherwood Decl. Ex. C.  It is undisputed that Plaintiff was represented by counsel when he signed the two-page release, and he attested to his complete understanding of its terms.  *See Id*.; Br. 1-2; Opp. at 7 n.3.  Plaintiff does not allege that his counsel was inadequate or that the release was procured by duress, illegality, fraud, or mutual mistake.  In sum, the Court finds that Plaintiff knowingly and voluntarily entered into the General Release, which bars all of his claims in this action.

      The General Release is substantially similar to releases repeatedly found by courts in the Second Circuit to be enforceable and to preclude claims under similar circumstances.  For example, in *Smickle v. City of New York*, the plaintiff, like Plaintiff here, brought claims for alleged violations of his constitutional rights while he was incarcerated at Rikers Island.  2018 WL 1578381, at *1.  Like here, after the defendants had already answered the amended complaint, they discovered a general release that the plaintiff had entered with the Office of the Comptroller in connection with an earlier incident.  *See id*. at *1-2.  Also like here, the defendants then moved to amend their answer and for judgment on the pleadings based on the general release.  *Id*. at *2.  The release there contained language nearly identical to the General Release here.  *Id*.  The court allowed the defendants to amend their answer and held that the

language in the release was "unambiguous"; that it clearly covered the claims at issue; and that the plaintiff knowingly and voluntarily waived his claims when he entered the release with the assistance of counsel. *Id*. at *4. Because the release plainly barred the claims alleged in the lawsuit, the court granted judgment on the pleadings. *Id*.

Similarly, in *Gracia v. City of New York*, the defendants discovered a general release that the plaintiff had entered with the Office of the Comptroller, and they moved to amend their answer and for judgment on the pleadings. 2017 WL 4286319, at *1-4. The release there contained nearly identical language as the General Release here. *Id*. at *1. After granting the defendant's motion to amend, the court found that the release unambiguously precluded the claims at issue. *Id*. at *2. It recognized that many courts had similarly "found identical or nearly identical general releases to be unambiguous." *Id*. at *2 (collecting cases). Although the plaintiff argued that she did not understand she was waiving the particular claims in the lawsuit by entering the release, the court concluded that she was represented by counsel at the time and "should have understood the scope of the general release and its impact on this lawsuit." *Id*. at *3. Accordingly, the court, granted the motion for judgment on the pleadings. *Id*. at *4.

*Smickle* and *Gracia* are not unique; courts routinely find that nearly identical general releases are enforceable and preclude claims against the City of New York as a matter of law. *See, e.g.*, *Valdiviezo v. Greer*, 787 F. App'x 48, 49 (2d Cir. 2019) (concluding that nearly identical release precluded claims as a matter of law since the plaintiff did "not allege that the release was procured by duress, illegality, fraud, or mutual mistake; he was represented by counsel at the time that he signed the release; and his signature attested to his understanding of the release's terms"); *Arzu*, 2015 WL 4635602, at *3 (granting motion to amend answer and judgment on the pleadings based on substantially similar general release); *Nathaniel*, 2017 WL

3912986, at *2; *Liverpool v. City of New York*, No. 18-cv-01354 (LJL), 2021 WL 3604855, at *3-4 (S.D.N.Y. Aug. 12, 2021); *Charlery v. Dep't of Educ. of City of N.Y.*, No. 15-cv-07994 (JPO), 2017 WL 2124447, at *2-3 (S.D.N.Y. May 15, 2017), *aff'd sub nom. Charlery v. City of N.Y. Dep't of Educ.*, 737 F. App'x 54 (2d Cir. 2018); *Hackshaw v. Urquiaga*, No. 15-cv-04005 (ER), 2016 WL 6534253, at *1, 3-4 (S.D.N.Y. Nov. 2, 2016); *Staples v. Officer Acolatza*, No. 14-cv-03922 (WHP), 2016 WL 4533560, at *2-3 (S.D.N.Y. Mar. 9, 2016); *Muhammad v. Schriro*, No. 13-cv-01962 (PKC), 2014 WL 4652564, at *5 (S.D.N.Y. Sept. 18, 2014).

Plaintiff's argument that "there is a live issue as to whether Plaintiff fairly and knowingly released the particular claims at issue in this litigation" does not change the outcome here. Opp. at 9-10. Aside from the conclusory assertion that "a live issue" exists, Plaintiff does not identify any facts or circumstances that suggest his release of claims was anything other than knowing and voluntary. *See id.* Further, "Plaintiff waived all claims against Defendants, known and unknown, occurring on or before the date of the Release," which covers the particular claims at issue in this lawsuit as a matter of law. *Smickle*, 2018 WL 1578381, at *4 n.7 (rejecting similar argument because general release encompassed the particular claims alleged as a matter of law). Additionally, it is undisputed that Plaintiff was represented by counsel when he entered the General Release, he attested that he fully understood the General Release, and he does not dispute the authenticity of the General Release. *See* Sherwood Decl. Ex. C; Br. 1-2; Opp. at 7 n.3. Plaintiff, therefore, knowingly and voluntarily waived his claims through the General Release. *See, e.g.*, *Gracia*, 2017 WL 4286319, at *6-10 (finding plaintiff knowingly and voluntarily released claims as a matter of law where he entered a nearly identical release while represented by counsel); *Valdiviezo*, 787 F. App'x at 49 (affirming enforcement of general

14

release where the plaintiff was represented by counsel, attested that he understood the release, and did not otherwise allege duress, illegality, fraud, or mutual mistake).

Accordingly, accepting the well-pleaded allegations in the Amended Complaint as true, considering Plaintiff's General Release, and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff's claims are barred by the General Release and must, therefore, be dismissed.[5]

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED and the Amended Complaint is DISMISSED.  The Clerk of Court is respectfully directed to close the case.

Dated: May 30, 2023
       New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge

---

[5] Plaintiff's additional argument that judgment on the pleadings should be denied because it would cause undue delay, *see* Opp. at 10-11, fails for the same reasons as Plaintiff's argument that the motion to amend should be denied due to undue delay, *see supra* § I(B).  The Court has considered Plaintiff's remaining arguments and finds them to be without merit.